[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13215

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 19, 2011
JOHN LEY
CLERK

D. C. Docket No. 6:08-cv-01853-GAP-GJK

SIGNATURE PHARMACY, INC.,
a Florida corporation,
ROBERT STAN LOOMIS,
an individual, et al.,

                                        Plaintiff-Appellees,

                        versus

ALEX WRIGHT,
an individual,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 19, 2011)

Before DUBINA, Chief Judge, HILL, Circuit Judge, and GOLDBERG,* Judge.

PER CURIAM:

Plaintiff-Appellees Signature Pharmacy, Inc., et al. ("Signature") brought an action against Alex Wright ("Wright"), an officer with the Metropolitan Bureau of Investigation ("MBI"); the City of Orlando; the Albany County District Attorney's Office ("Albany DA"); the Albany County District Attorney, P. David Soares ("Soares"); Assistant Albany County District Attorney, Christopher P. Baynes ("Baynes"); and Mark Haskins ("Haskins"), an officer with the New York Bureau of Narcotics Enforcement ("NYBNE"). This appeal only addresses the claims against Wright.

Plaintiffs sued Wright pursuant to 42 U.S.C. § 1983 (2006) on claims of (1) unlawful seizure of plaintiffs' property without probable cause and outside the scope of any valid search warrant; (2) unlawful arrest; (3) malicious prosecution; (4) defamation; and (5) unlawful conspiracy. The district court granted Wright's motion for summary judgment as to the unlawful arrest, malicious prosecution, and defamation claims.

However, the district court denied summary judgment as to the unlawful

---

*Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

seizure claim, finding that the search warrants Wright executed did not comply with the particularity requirement of the *Fourth Amendment*. The district court also denied summary judgment as to the unlawful conspiracy claim, finding that Wright's failure to address that claim warranted denial. Wright appeals the district court's denial of summary judgment on those two claims. We conclude that Wright is entitled to qualified immunity for the § 1983 claims and reverse.

## I. BACKGROUND

Signature, a pharmacy with business locations in Winter Park and Orlando, Florida, was being investigated for knowingly providing steroids and human growth hormones to individuals without a medical need for those prescriptions and in the absence of a physician-patient relationship.

In November 2005, Wright was assigned to the Signature case. Wright pulled trash from Signature's dumpsters, interviewed Signature's customers, and conducted undercover operations and surveillance of Signature's premises.

On August 4, 2006, Wright applied for a wiretap with Judge Kest of the Ninth Circuit Court, in and for Orange and Osceola Counties in Florida. Judge Kest approved the wiretap, and Wright began monitoring Signature's phone and fax lines for the next 60 days.

In September 2006, Wright met with the other individuals involved in the

investigation to create a plan of action. Throughout the fall of 2006, Wright also participated in several meetings with sports teams and the press.

In January 2007, a grand jury in Albany County Court in Albany County, New York returned an indictment against Signature and its employees. In February 2007, a New York State Court issued arrest warrants for the individuals indicted.

On February 26, 2007, at approximately 8:00 p.m., Wright went to Judge Kest's home with applications for search warrants for the Signature Pharmacy locations. After a thorough, hour-long review of the application and supporting materials, Judge Kest authorized the search warrants.

The next day, the 27th of February, Wright, Baynes, Soares, agents from the DEA, and Orlando police officers executed the search warrants at Signature's Winter Park and Orlando, Florida locations and arrests were made. The search was executed in compliance with the warrants issued by Judge Kest.

## II. STANDARD OF REVIEW

The denial of qualified immunity is reviewed *de novo*. *Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir. 2000).

## III. DISCUSSION

The district court found that the search warrants Wright procured and executed were facially invalid, general warrants. The district court concluded that Wright was not entitled to qualified immunity and denied summary judgment because he executed warrants that failed to comply with the particularity requirements of the *Fourth Amendment*.

On appeal, Wright challenges the district court's denial of qualified immunity.

*A. Qualified Immunity*

Qualified immunity protects officials from civil liability in the performance of discretionary functions "so long as their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Rehberg v. Paulk*, 611 F.3d 828, 838 (11th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A government agent is entitled to immunity unless his act is 'so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing.'" *Rehberg*, 611 F.3d at 838 (quoting *Lassiter v. Ala. A&M Univ. Bd. Of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994)).

There is a two-step inquiry to determine whether a defendant is entitled to qualified immunity. *Maggio*, 211 F.3d at 1350. First, the defendant must prove he

5

was acting within the scope of his discretionary authority when the alleged misconduct occurred. *Id.* Once the defendant demonstrates that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that a grant of qualified immunity is inappropriate. The plaintiff must show (1) there was a constitutional right clearly established at the time of the defendant's alleged misconduct; and (2) the defendant's conduct violated that clearly established constitutional right. *See Rehberg*, 611 F.3d at 838-39; *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001).[1]

*B. Unlawful Seizure*

It is undisputed that Wright was acting within the scope of his discretionary authority when he procured and executed the search warrants at issue. Moreover, it is evident that there was a clearly established constitutional right at the time of Wright's conduct because the *Fourth Amendment* clearly provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a

---

[1] In *Pearson v. Callahan*, the Supreme Court recognized that courts have discretion to determine which prong of the test to apply first to avoid unnecessary litigation of constitutional issues. *Pearson v. Callahan,* 555 U.S. 223 (2009).

warrant that plainly did not comply with that requirement was valid." *Groh v.*

*Ramirez*, 540 U.S. 551, 563 (2004).

Therefore, we focus our review on the district court's determination that the

warrants Wright executed failed to comply with the particularity requirement of

the *Fourth Amendment*, violating plaintiffs' *Fourth Amendment* right to be free

from unreasonable searches and seizures.

Wright argues that the warrants were not facially invalid because they

contained detailed descriptions of the locations to be searched and the items to be

seized. Wright contends that a reasonable officer could rely upon the warrants,

and that he was not plainly incompetent or knowingly violating the law in doing

so. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986). We agree. Because the

warrants contained detailed descriptions of the items to be seized and were signed

by a state court judge after careful examination, we conclude that Wright's

reliance on the warrants in executing his search of the premises was reasonable.

*1. Description of premises to be searched*

The district court considered the warrants' description of the premises

meager, stating that the warrants simply identify a street address and briefly

describe the building.

However, as this Court has noted, a search warrant's description is

sufficient if it enables an officer to ascertain and identify, with reasonable effort, the place intended to be searched. *United States v. Ellis*, 971 F.2d 701, 703 (11th Cir. 1992) (citation omitted). Specifically, a

> warrant's description of the place to be searched is not required to meet technical requirements or have the specificity sought by conveyancers. The warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority.

*Id.* (quoting *United States v. Burke*, 784 F.2d 1090, 1093 (11th Cir.), *cert. denied*, 476 U.S. 1174 (1986)). In addition, "[i]n evaluating the effect [that an error or deficiency in the warrant has] on the sufficiency of [the] warrant, this Court has also taken into account the knowledge of the officer executing the warrant, even where such knowledge was not reflected in the warrant or in the affidavit supporting the warrant." *Burke*, 784 F.2d at 1092-93.

The search warrants at issue contain the addresses of the buildings to be searched and describe the buildings, such as their entryways and doors. For example, the Kuhl Avenue warrant states that the building is two stories, is painted beige with red trim, can be accessed to the East from Columbia street, has two public entrances, has two sets of double glass doors containing the street address ("1200") and the Signature Pharmacy logo, and has a loading dock on the south

8

side. Wright, an executor of the search warrants, had been investigating Signature for nearly two years. The addresses and descriptions of the buildings, in conjunction with Wright's knowledge, were sufficient to enable the officers to locate and identify the premises with reasonable effort. *See Burke,* 784 F.2d at 1092-93.

Moreover, the fact that the warrants do not indicate that the building is a multiple-occupancy structure with offices unaffiliated with Signature and do not describe the particular floor, office, suites, or subunits to be searched does not necessarily render the warrants facially invalid. Even if failure to describe with particularity the floor, office, suites, or subunits to be searched caused law enforcement to conduct a search of other tenants' offices, that would not constitute a violation of these Plaintiffs' *Fourth Amendment* right. *See Katz v. United States*, 389 U.S. 347 (1967) (highlighting that the *Fourth Amendment* protects people, not places); *see also Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (noting that a defendant must demonstrate a personal expectation of privacy in the place searched to claim the protection of the *Fourth Amendment*).

The places to be searched were described with sufficient particularity, and the warrants were not so facially deficient in that regard that Wright could not reasonably presume them to be valid. *See Groh*, 540 U.S. at 565.

9

*2. Description of items to be seized*

The district court also considered the warrants' description of the items to be seized too broad, stating that there was merely a laundry list of specific items unconnected to an alleged crime. We disagree.

This Court has held that "a description is sufficiently particular when it enables the searcher reasonably to ascertain and identify the things to be seized." *United States v. Santarelli*, 778 F.2d 609, 614 (11th Cir. 1985). Warrants have been upheld "when the description is as specific as the circumstances and the nature of the activity under investigation permit." *Id.* In *Santarelli*, the final clause of the warrant at issue, authorized seizure of

> **all property constituting evidence of the crimes of** making and conspiring to make extortionate extensions of credit, financing extortionate extensions of credit, and collections of and conspiracy to collect extortionate extensions of credit which are being kept there in violation of Title 18, United States Code, §§ 892, 893 and 894.

*Id.* at 613-14 (emphasis added). This Court upheld that warrant despite its broad wording. *Id.* at 615 (noting that "[s]everal circuits have upheld broadly-worded search warrants authorizing the seizure of . . . evidence" relating to the specific crime(s) charged). Drawing on the language and reasoning of the Eighth Circuit, we upheld the warrant finding that the "general description sufficed because the exact identity of the evidence to be seized could not have been known at the time

10

the warrant issued and because the warrant limited the search to evidence of [the relevant crime(s)]." *Id.* (citing *United States v. Dennis*, 625 F.2d 782, 792 (8th Cir. 1980)).

Similarly, in this case, the warrants authorized seizure of a number of items, such as documents, records, bills, logs, computer equipment, and so forth, **which [are] evidence of a criminal violation of the laws of the State of Florida**. A list of the pertinent crimes and/or statutes followed that language, including, for example, bad faith manufacture, purchase, sale, or delivery of anabolic steroids by prescription, which are controlled substances, and distribution and possession with intent to distribute controlled substances, among others.

Because the descriptions in the warrants refer to items that are evidence of a violation of certain statutes relating to the sale of controlled substances, the items were described with sufficient particularity to allow Wright, a seasoned law enforcement officer, to identify the things to be seized. *See United States v. Betancourt*, 734 F.2d 750, 754-55 (11th Cir.), *cert. denied*, 469 U.S. 1021 (1984) (stating that a warrant's description need not contain elaborate specificity; it is sufficiently particular when it enables the  searcher to reasonably ascertain and identify the things authorized to be seized).

In sum, the warrants described with sufficient particularity the place to be

11

searched and the items to be seized. Accordingly, Wright did not violate plaintiffs' *Fourth Amendment* right, and he is entitled to qualified immunity for the unlawful seizure claim.

*C. Unlawful Conspiracy*

"A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010) (citation omitted). The plaintiff "must show that the parties 'reached an understanding' to deny the plaintiff his or her rights." *Id.* (quoting *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990)). Moreover, "[t]he conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." *Bendiburg*, 909 F.2d at 468 (citation omitted).

Because Wright did not deny plaintiffs their *Fourth Amendment* right, there is no actionable wrong to support Signature's conspiracy claim. Thus, Wright is entitled to qualified immunity on the unlawful conspiracy claim as well.

**IV. CONCLUSION**

12

We conclude that Wright is entitled to qualified immunity.  Accordingly, the order of the district court denying Wright's motion for summary judgment based on his qualified immunity from plaintiffs' § 1983 claims is reversed.

**REVERSED**.